850 So.2d 180 (2003)
Chad GRAY, Appellant,
v.
ABS GLOBAL, INC., Appellee.
No. 2002-CA-00482-COA.
Court of Appeals of Mississippi.
July 15, 2003.
*181 Carlos Eugene Moore, A.E. (Rusty) Harlow, for appellant.
William C. Murphree, Tupelo, Thomas P. Heneghan and Christine Cooney Mansour, attorneys for appellee.
BEFORE KING, P.J., THOMAS, IRVING and CHANDLER, JJ.
IRVING, J., for the court.
¶ 1. Chad Gray sued ABS Global, Inc. over the loss of bull semen when a liquid nitrogen freezer unit used to store the semen failed. Gray's suit against ABS alleged that the nitrogen unit failed due to the lack of proper service and that according to ABS's standards the unit should be serviced every four months but that an ABS sales representative named Brad Brewer promised to service the unit every three months to ensure that the unit functioned properly. Gray further alleged that due to Brewer's negligence and failure to maintain the unit as promised, the unit failed and resulted in the destruction and complete loss of the bull semen.
¶ 2. ABS responded to the complaint by asserting that it had no relationship with Gray, either contractual or otherwise, and owed him no duty or obligation. Approximately two months after filing its response to Gray's complaint, ABS filed a motion for summary judgment wherein it alleged that it was entitled to summary judgment because it owed no duty to Gray and was not vicariously liable for the acts of Brewer, its independent sales representative.
¶ 3. The Grenada County Circuit Court granted summary judgment in favor of ABS. Gray has appealed and argues that *182 the trial court erred in granting summary judgment because genuine issues of material fact exist regarding the relationship between Brewer and ABS and Brewer's power to bind ABS for representations he made to Gray.
¶ 4. Finding no reversible error, this Court affirms the trial court's judgment.

FACTS
¶ 5. In support of its motion for summary judgment, ABS attached the sales agreement between it and Brewer. The agreement is a very detailed document entitled "ABS North American Sales Representative Agreement." Article 1, subparagraph 1.1 of the agreement provides for the appointment of James B. Brewer as ABS's exclusive sales representative for the solicitation of orders for certain products, including semen, in a specified area. Article 1, subparagraph 1.4 is entitled "Independent Purchaser Status" and provides in pertinent part:
This Agreement does not constitute a general agency. Except for the solicitation of orders, the Representative shall not be considered an agent or legal representative of ABS for any purpose. The Representative is not granted and shall not exercise the authority to assume or create any obligation or responsibility on behalf or in the name of ABS... The Representative shall be responsible for all of its own expenses and employees. Representative shall incur no expense chargeable to ABS unless authorized by ABS in writing in advance.
Article 2, subparagraph 2.1 provides that ABS shall pay Brewer a standard commission. Article 4, subparagraph 4.2 entitled "Semen Storage Equipment and Service" provides in relevant part:
Semen protection for Representative owned equipment will be provided on documented refrigerator failure as per the current edition of the ABS Refrigerator service Bulletin but will never be lower than the percent allowed for a 0-5 year old refrigerator. If the Representative provides liquid nitrogen service to customers, the Representative may so only if there is a duly executed Liquid Nitrogen Service Agreement with the customer and the Representative. Such agreement, as amended from time to time, specifically limits or excludes the liability of ABS for refrigerator failure or failure to maintain sufficient levels of liquid nitrogen.
¶ 6. Also, in support of its motion for summary judgment, ABS submitted the affidavit of Rodney Moore, its district sales manager during the entire period of time that James Brad Brewer was a sales representative for ABS. In his affidavit, Moore asserted that the ABS North American Sales Representative Agreement was the only agreement between ABS and Brewer and constituted the only relationship between them. Moore's affidavit also stated that ABS rented to Brewer a large container to hold the liquid nitrogen that Brewer used to service his customers and that Brewer furnished all other supplies.
¶ 7. In response to ABS's motion for summary judgment, Gray asserted that discovery was incomplete but did not make a Rule 56(f) motion for continuance to allow further discovery. Gray further asserted that the agreement between ABS and Brewer constituted an employment agreement documenting the relationship of the parties and substantiating Brewer's conduct on behalf of ABS. As additional support in opposition to ABS's motion for summary judgment, Gray submitted his own affidavit in which he swore that "at all relevant times in my relationship with ABS Global, Inc., Brad Brewer appeared at my residence by and on behalf of ABS *183 Global, Inc. and on no other entity and all billing came from ABS."
¶ 8. Additional facts will be recited during the discussion of the issue.

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 9. A motion for summary judgment is granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R.C.P. 56(c); Brown v. Credit Ctr. Inc., 444 So.2d 358, 362-63 (Miss.1983). A material fact is a fact that tends to resolve any of the issues properly raised by the parties. Mosby v. Moore, 716 So.2d 551, 558(¶ 35) (Miss.1998). An appellate court reviews summary judgments under the de novo standard and views the evidence in the light most favorable to the non-moving party. Id. If any triable issues of material fact exist, the trial court's decision to grant summary judgment will be reversed; otherwise, the decision will be affirmed. Heirs and Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Community College Dist., 743 So.2d 311, 314(¶ 11) (Miss.1999).
¶ 10. First, Gray argues that it was clearly erroneous for the trial judge to grant summary judgment because there does exist a genuine dispute of material fact or at least reasonable doubt as to whether Brewer was the employee of ABS. Gray explains in his affidavit that Brewer appeared at his residence by and on behalf of ABS and that all billing came from ABS. Therefore, in Gray's view, Brewer must be considered an employee or agent of ABS. Gray urges that the opposing affidavits which were filed by him and ABS regarding Brewer's agency status prove the existence of a genuine issue of material fact. Stated another way, Gray argues that the two contradictory affidavits in and of themselves are enough to show that there is a genuine issue of material fact of whether Brewer was an employee of ABS. Conversely, ABS asserts that the competing affidavits in this case do not alter the fact that Brewer was an independent contractor as a matter of law and not an employee.
¶ 11. Whether an individual is an employee or independent contractor depends on the facts, not someone's summary characterization of the relationship. Moore's affidavit alleged the following facts:
(1) Brewer was not paid a base salary; (2) ABS paid him a commission based on the products he sold for ABS; (3) Brewer furnished all of the supplies, equipment, and materials that he used in his work for ABS except a large container for storing liquid nitrogen (this container was rented to Brewer by ABS); (4) Brewer used his own vehicle to call on his customers; (5) ABS provided no office space for Brewer; (6) Brewer's work for ABS consisted only of promoting and selling ABS's products; (7) Brewer controlled the details of how his work was done; (8) Brewer determined who his customers would be and when and how often he called on them; (9) Brewer had control over the sales pitch he used and how he marketed ABS's products.
As has already been noted, Gray did not rebut the specific facts alleged in Moore's affidavit, relying instead on a general assertion that Brewer appeared at his residence by and on behalf of ABS and that all billing came from ABS.
¶ 12. As the supreme court reiterated in Brown, Rule 56 of Mississippi Rules of Civil Procedure provides that a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues *184 that need to be tried. Brown, 444 So.2d at 362. The rule should operate to prevent the system of extremely simple pleadings from shielding claimants without real claims or defendants without real defenses.
Id.
¶ 13. Here, all Gray submitted to rebut ABS's motion for summary judgment was his affidavit. The affidavit is not a particularization of facts. To the contrary, it is Gray's personal summary characterization of Brewer's relationship with ABS, unsupported by any specific facts which led him to make the characterization. Neither Gray's subjective belief nor his statement, without more, that Brewer was an agent for ABS make that be the case if the facts show otherwise.
¶ 14. As previously discussed, ABS contends that Brewer was an independent contractor. An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. Richardson v. APAC-Mississippi, Inc., 631 So.2d 143, 148 (Miss. 1994). The case of Kisner v. Jackson, 159 Miss. 424, 132 So. 90 (1931), established the criteria that Mississippi courts should apply to determine if an individual is an independent contractor:
1. Whether the principal master has the power to terminate the contract at will;
2. Whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment;
3. Whether he furnishes the means and appliances for the work;
4. Whether he has control of the premises;
5. Whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output;
6. Whether he has the right to prescribe and furnish the details of the kind and character of work to be done;
7. Whether he has the right to supervise and inspect the work during the course of the employment;
8. Whether he has the right to direct the details of the manner in which the work is to be done;
9. Whether he has the right to employ and discharge the sub-employees and to fix their compensation; and
10. Whether he is obliged to pay the wages of said employees.
Kisner, 159 Miss. at 428-29, 132 So. at 91.
¶ 15. The undisputed facts show that ABS had the power to terminate the agreement at will or for cause upon proper notice to Brewer. The agreement between ABS and Brewer provided Brewer with compensation in the form of a standard commission based on the products that he sold for ABS. He was not paid a base salary. Brewer controlled how much he sold and how much he was paid. According to Moore's affidavit, Brewer furnished all of the supplies, equipment, and materials, except a large liquid nitrogen storage container, that Brewer used in his work for ABS. The liquid nitrogen storage container was rented to Brewer by ABS. ABS only furnished the products that Brewer sold. Brewer used his own vehicle to call on his customers. ABS provided no office for Brewer. ABS did not provide Brewer with any type of insurance or any other employment benefits. Brewer controlled the details of how his work was done. Brewer alone determined who his customers would be and when and how often he called on them. Brewer also had control *185 over the sales and marketing strategies that he used, although ABS's district sales manager accompanied Brewer on sale calls two or three times a year to observe him, to provide him with further information on ABS's products, and to improve his sale skills in relation to ABS's products. Also, ABS, acting through its district sales manager, assisted Brewer in developing a business plan for use by Brewer. Occasionally, Brewer provided reports to ABS on his promotional and sales activities. However, as already mentioned, ABS did not control the details of the manner in which Brewer completed his work.
¶ 16. Under the terms of the agreement, Brewer could not utilize subagents without ABS's written approval. Also, as already discussed, the agreement between ABS and Brewer required Brewer to execute a written agreement with customers to whom Brewer provided liquid nitrogen service. Other provisions of the agreement between ABS and Brewer required Brewer to follow general ABS policies and to use his best efforts to sell ABS's products.
¶ 17. Based on these undisputed facts, it is clear to us that the relationship between ABS and Brewer was not one of employer/employee nor master/servant. We need not decide whether the relationship may properly be characterized as employer/independent contractor or principal/agent. What is clear is that Gray has failed to rebut the very detailed and substantial facts which ABS has offered to show that there are no material issues of fact, regardless of the classification of the relationship between ABS and Brewer.
¶ 18. The only fact offered by Gray is the fact that all of his bills came from ABS. However, we do not find that this fact alone is sufficient to preclude summary judgment. It is not disputed that the products being sold belonged to ABS. It follows that ABS would be the entity that billed for the products after the sales had been made by Brewer. However, we fail to see the pivotal role of this fact in the determination of the relationship between Brewer and ABS. The facts presented in this case do not detail any lines of direct communication between ABS and Gray besides that of billing. Without more affirmative steps on the part of ABS to service Gray, we cannot find any vicarious liability of ABS to Gray. Finding no reversible error, we affirm the judgment of the trial court.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER and GRIFFIS, JJ., CONCUR.